```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
_____
                                    )
CHARKEEM HYATT,                     )
                                    )
               Petitioner,          )
                                    )      CIVIL ACTION
          v.                        )      NO. 15-10087-WGY
                                    )
BRUCE GELB,                         )
                                    )
               Respondent.          )
_____ )
```

YOUNG, D.J.                                            October 30, 2015

### MEMORANDUM AND ORDER

**I.   INTRODUCTION**

Following his conviction on an array of charges in the courts of the Commonwealth of Massachusetts, prisoner Charkeem Hyatt ("Hyatt") filed the instant petition for a writ of habeas corpus against Bruce Gelb (the "Respondent"), the superintendent of the Souza-Baranowski Correctional Center, seeking review of alleged errors of constitutional magnitude at trial. Specifically, he alleges that his due process and equal protection rights under the Fourteenth Amendment were violated when the judge at trial denied his request to accompany the jury on a "view" of the crime scene.

**A.   Hyatt's Trial**

In July 2009, Hyatt was involved in the shooting of four people outside a bar in the Roxbury neighborhood of Boston.

1

Commonwealth v. Hyatt, No. 12-P-1257, 2014 WL 2178782, at *1 (Mass. App. Ct. May 27, 2014).  That September, a grand jury in Suffolk County indicted Hyatt on numerous counts: one count of unlawful possession of a firearm, one count of unlawful possession of ammunition, one count of possession of a loaded firearm, three counts of aggravated assault and battery with a dangerous weapon, three counts of assault with a dangerous weapon, and four counts of possession of a firearm in commission of a felony.  Resp't's Mem. Opp'n Charkeem Hyatt's Pet. Writ Habeas Corpus ("Resp't Mem.") 1, ECF No. 12.

Hyatt pled not guilty to all counts, Pet. Relief Conviction Sentence Person State Custody ("Hyatt's Pet.") 2, ECF No. 1, and a jury trial commenced on February 6, 2012 before Justice Brady of the Massachusetts Superior Court, sitting in and for the County of Suffolk, Resp.'s Mem. 1.  The portion of the trial that gave rise to Hyatt's habeas petition took place on February 8 and 9, when Justice Brady arranged and then conducted a jury view of the bar where the shooting took place. Mot. Suppl. R., Ex. 3, Jury Trial Tr. Proceedings Vol. III ("Tr. Vol. III") 214:6-20, ECF No. 10-3.  On February 8, during a discussion of the logistics and rules of the upcoming view, Justice Brady had the following exchange with Hyatt's trial counsel:

> MS. ODIAGA: Mr. Hyatt comes with?  Does he come to the view?

2

> THE COURT: No.  That's a security issue.  I can't bring him.
>
> MS. ODIAGA: Well, I would request that he be brought.
>
> THE COURT: He's in custody.  I can't bring him.  I don't have enough security people for that.  I've never had a defendant, other than one who's on the street.
>
> MS. ODIAGA: Well, I would ask that he be brought, however it needs to be arranged, Your Honor.
>
> THE COURT: Okay, I would have to deny that, and the reason is obviously security.

Id.  Later that day, Hyatt's counsel renewed her request that Hyatt be allowed to accompany the jury on the view.  Id. at 287:11-16.  In response to the request, the Court engaged in the following exchange:

> THE COURT: Look, I'm sorry.  He's in custody for very serious charges.  It's a very serious event.  I'm not going to allow him to come on the view because I just don't have adequate security.  Further, I can't have him without chains out there, so the jury is going to be there.  It just isn't a workable situation.  So I understand that the [Massachusetts Supreme Judicial Court] has never changed the Judge's discretion about that, so if you want, you've made an objection, that's fine, I've overruled it.  But I'm not going to allow it.
>
> . . .
>
> MS. ODIAGA: I think the jury is going to be made more aware of the fact that he is in custody by his absence.
>
> THE COURT: I probably have done maybe thirty views without defendants there, and I never said anything special.  If you can think of anything you want me to say, I'd be happy to do it, but I think probably most lawyers feel that it's better left unsaid.  Maybe the

3

>     jury will just assume that they never come.  But if
>     you can think of anything tomorrow, by all means I'd
>     be happy to consider it, okay?

Id. at 287:17-288:17.

The view proceeded as scheduled the next morning without Hyatt in attendance.  Mot. Suppl. R., Ex. 5, Jury Trial Tr. Proceedings Vol. IV ("Tr. Vol. IV") 11:19-30:25, ECF No. 10-5.  Both Hyatt's counsel and the prosecutor representing the Commonwealth were permitted to point out certain features of the scene to the jury, but neither was allowed to make any argument or offer other commentary.  See id. at 8:9-9:6, 11:1-5.  At no point before or during the view did anyone - either Justice Brady or counsel for either side - draw any attention to the fact of Hyatt's absence.  See id. at 6:1-30:25.

On February 16, 2012, the jury returned a verdict of guilty on eleven of the fourteen counts, deeming Hyatt not guilty only on the counts alleging assault by means of a dangerous weapon.  Mot. Suppl. R., Ex. 9, Jury Trial Tr. Proceedings Vol. IX ("Tr. Vol. IX") 7:21-13:3, ECF No. 10-9.  Following the jury's verdict, the Court on February 22 sentenced Hyatt to a term of twelve to fifteen years in the Souza-Baranowski Correctional Center.  Hyatt's Pet. 2.

**B.   Direct Appeals**

Hyatt subsequently appealed his conviction to the Massachusetts Appeals Court, alleging that his exclusion from

4

the view had violated his constitutional rights to due process and equal protection.[1]  Hyatt's Pet. 3.  On May 27, 2014, the Appeals Court rejected this argument and affirmed the conviction.  Hyatt, 2014 WL 2178782, at *1-3.  In so doing, the Appeals Court noted that it was bound by "a long-standing precedent that a defendant does not have the right to be present for a view and that a defendant's absence does not offend his rights under the United States Constitution or [the Massachusetts] Declaration of Rights."  Id. at *1 (citing Commonwealth v. Evans, 438 Mass. 142, 150-51 (2002), cert. denied, 538 U.S. 966 (2003); Commonwealth v. Gordon, 422 Mass. 816, 849 (1996); Berlandi v. Commonwealth, 314 Mass. 424, 451 (1943); Commonwealth v. Dascalakis, 246 Mass. 12, 31 (1923) ("The whole subject rests in the sound discretion of the court.  That discretion commonly and wisely has been exercised so that the defendant in a criminal case does not accompany the jury on a view.")).  Relying on this precedent, the Appeals Court held that Justice Brady had acted "well within his authority" when he cited "security" as the reason he denied Hyatt's request to attend the view.  Id. (citing Evans, 438 Mass. at 151).

---

[1] Hyatt also alleged that the prosecutor had been allowed to ask an improper question during his re-cross examination of a defense witness.  Hyatt, 2014 WL 2178782, at *2.  Because he does not raise this argument as a ground for relief before this Court, see Hyatt's Pet., there is no need to recount the analysis of the Appeals Court on this point.

5

In addition to this core holding, the Appeals Court made two additional statements.  First, it noted that even if exclusion from a jury view were capable of constituting a due process violation, Hyatt had failed to make the required showing that that violation had caused him "substantial harm."  Id. (citing Commonwealth v. Gomes, 459 Mass. 194, 199 (2011)).  Second, the Appeals Court said without further explanation that it was unpersuaded by Hyatt's attempt to analogize Justice Brady's refusal to allow him to attend the view to a judge's permitting a defendant to be seen by the jury in prison garb or shackles, a practice that (according to a distinct line of precedent) requires a judge to make particularized findings.  Id. (citing Deck v. Missouri, 544 U.S. 622, 630-34 (2005)).

In the wake of the rejection of his appeal, Hyatt petitioned the Massachusetts Supreme Judicial Court for further review, but that court denied his petition on August 1, 2014.  Commonwealth v. Hyatt, 469 Mass. 1104 (2014); see also Hyatt's Pet., Ex. 2, Appl. Further Appellate Review ("SJC Petition") 2-8, ECF No. 1-2 (petitioning the Supreme Judicial Court for a ruling that a judge must make particularized findings before excluding a defendant from a jury view).  Hyatt did not file a petition for a writ of certiorari from the United States Supreme Court, nor did he seek any subsequent form of collateral relief in the courts of the Commonwealth.  Hyatt's Pet. 4.

6

### C.   The Federal Habeas Petition

Hyatt filed the instant petition for a writ of habeas corpus before this Court on January 15, 2015.  Hyatt's Pet.; see also Hyatt's Pet., Ex. 1, Mem. Supp. Pet. Writ Habeas Corpus ("Hyatt's Mem."), ECF No. 1-1.  Respondent filed a memorandum in opposition to the petition on May 29, 2015.  Resp't's Mem.

## II.   ANALYSIS

### A.   Legal Standard

Petitions for habeas corpus seeking relief from convictions in state courts are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Publ. No. 104-132, 110 Stat. 1214 (1996), which states in relevant part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) ("Section 2254(d)").  Under Section 2254(d)(1), a federal court may grant habeas relief if the last state court to adjudicate the merits of petitioner's claim employed a legal rule that contradicts the governing law set

7

forth in [Supreme Court] cases or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a[n] . . . opposite" result.  Williams v. Taylor, 529 U.S. 362, 405 (2000); see also Companonio v. O'Brien, 672 F.3d 101, 109 (1st Cir. 2012). Section 2254(d)(2), meanwhile, only permits relief when "the state court identifies the correct governing legal principle from [the Supreme Court]'s decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.  Under both prongs of Section 2254(d), the incorrectness of a state court decision does not alone warrant relief for petitioner; instead, relief may be granted only if the state court decision in question features "'some increment of incorrectness beyond error' that is 'great enough to make the decision unreasonable in the independent objective judgment of the federal court.'" Evans v. Thompson, 465 F. Supp. 2d 62, 67 (D. Mass. 2006) (quoting Norton v. Spencer, 351 F.3d 1, 8 (1st Cir. 2003)), aff'd, 518 F.3d 1 (1st Cir. 2008).

   B.   **Hyatt's Alleged Ground for Relief**

Hyatt advances only one ground for habeas relief: that his exclusion from the jury view violated his rights to due process and equal protection under the Fourteenth Amendment.[2]  Hyatt's

---

[2] There is some measure of dispute over whether Hyatt's equal protection claim is properly exhausted, as Respondent

Pet. 6. Given that AEDPA compels deference to the state court decision on the merits of a given issue, the briefing focuses on the reasonableness of the Massachusetts Appeals Court's holding that Hyatt was not entitled to attend the view. Hyatt appears to advance two chief reasons as to why the Appeals Court's decision was unreasonable: first, that the Appeals Court wrongly ignored precedent compelling it to evaluate the entire record in its analysis of whether attendance at the view would have aided

---

claims that Hyatt failed to make this argument before either the Appeals Court or the Supreme Judicial Court during his direct appeal. Answer 2-3, ECF No. 7. Hyatt, meanwhile, claims that he at the very least raised the equal protection argument in his petition for further appellate review from the Supreme Judicial Court. Hyatt's Mem. 1.

Whether the equal protection argument was properly exhausted in the courts of the Commonwealth is a close call: the phrase "equal protection" appears a few times in Hyatt's briefing before the Appeals Court, but the argument is never developed in any fashion distinct from the due process claim. See Brief & Record Appendix for the Defendant on Appeal from the Suffolk County Superior Court at 26-27, Commonwealth v. Hyatt, 85 Mass. App. Ct. 1122 (2014), 2013 WL 3366246. Similarly, the phrase "equal protection" receives only scant mention in Hyatt's petition to the Supreme Judicial Court. See SJC Petition 8 (looking to a case that grounded its holding in both due process and equal protection).

The exhaustion question ultimately is an academic one for two reasons. First, the fact that Hyatt's due process and equal protection arguments are functionally coterminous means that there would be no independent analysis of the equal protection claim that this Court would be able to undertake. Second, given the Court's ruling that any such claim would fail even if it were properly exhausted, a firm decision on the exhaustion issue would have no practical effect. Accordingly, the Court declines to decide whether the equal protection issue was exhausted in the courts of the Commonwealth and proceeds with the rest of its analysis assuming for the sake of argument that such a claim may be presented here in federal court.

the defense, Hyatt's Mem. 2-5; and second, that the Appeals Court applied the wrong federal standard when it rejected Hyatt's attempt to link his exclusion from the view to precedent governing when a court may force a defendant to appear before the jury in prison garb or shackles, id. at 6-9.  The Court will analyze each of those arguments in turn.

### 1.   Snyder v. Massachusetts

Turning to the first argument, Hyatt claims that the Appeals Court's reliance on "a long-standing precedent that a defendant does not have the right to be present for a view," Hyatt, 2014 WL 2178782, at *1, does not include any citations to federal authority and wrongly fails to apply the standard laid out in Snyder v. Massachusetts, 291 U.S. 97 (1934), overruled in part on other grounds by Mallory v. Hogan, 378 U.S. 1 (1964).  See Hyatt's Mem. 2-3.  According to Hyatt, Snyder held that whether a defendant may be excluded from a view "must be determined in the light of the whole record."  Id. at 3 (quoting Snyder, 291 U.S. at 114) (internal quotation marks omitted).  Applying this standard, the Supreme Court in Snyder held that the defendant's rights had not been violated because an examination of the record of the view turned up no way in which his presence would have aided his defense.  Snyder, 291 U.S. at 113.  In contrast, the Appeals Court in the instant case merely stated that a defendant has no right to attend a view, without

10

explicitly evaluating the record of the view itself.  See Hyatt, 2014 WL 2178782, at *1.  Hyatt claims that his attendance at the view would have made it likelier that attention would have been drawn to features of the scene helpful to his defense, particularly as they pertain to the ability of witnesses to make an accurate identification of the shooter.  Hyatt's Mem. 4 (citing People v. Mallory, 365 N.W.2d 673, 682 (Mich. 1984) (noting that a trial judge had failed to explain adequately how security concerns justified denying a defendant the right to attend a view to aid defense counsel, but noting that the fact that retrial was already required meant that it was unnecessary to determine whether this was reversible error)).

   Respondent portrays the holding of Snyder differently: rather than claiming that Snyder is focused on the nature of the record examination required to exclude a defendant from a view, Respondent stresses Snyder's statement that "[n]owhere in the decisions of [the U.S. Supreme Court] is there a dictum, and still less a ruling, that the Fourteenth Amendment assures the privilege of presence when presence would be useless, or the benefit but a shadow."  Resp't Mem. 7-8 (quoting Snyder, 291 U.S. at 106-07) (internal quotation marks omitted).  After stating that a defendant would gain no benefit by attending a view at which nobody was allowed to say anything, the Snyder Court stated that:

11

> Obviously the difference between a view at which every one is silent and a view accompanied by a request to note this feature or another is one of degree, and nothing more. . . . When the tacit directions are made explicit, the defendant is not wronged unless the supplement of words so transforms the quality of the procedure that injustice will be done if the defendant is kept away.  Statements to the jury pointing out the specific objects to be noted have been a traditional accompaniment of a view for about two centuries, if not longer.  The Fourteenth Amendment has not displaced the procedure of the ages.

291 U.S. at 97, 110-11.  The Court further noted that a defendant's rights are particularly protected when his counsel is the one to point out features of the scene to the jury.  See id. at 113 (stating that this practice "supplies an additional assurance that nothing helpful to either side will be overlooked upon the view").  The standard of Snyder, then, hinges not on the thoroughness of the examination of the record, as Hyatt claims, but rather on whether the record demonstrates that "the enforced absence of the defendant is so flagrantly unjust" as to call into question the fairness of the trial as a whole.  Id. at 115.

This Court rules that the Appeals Court reasonably applied federal law in holding that Hyatt's rights were not violated by his exclusion from the jury view.  As a preliminary matter, while Hyatt is correct that the Appeals Court did not cite Snyder or other federal precedent directly, the precedent on which it relied did so.  See, e.g., Evans, 438 Mass. at 150-51

(citing Snyder, 291 U.S. at 107-108). More fundamentally, the Appeals Court's holding that Hyatt had no affirmative right to be at the view - and, relatedly, its failure to evaluate whether particular circumstances in the record justified Hyatt's exclusion - reflects a reasonable reading of Snyder's standard. Indeed, this approach better accords with federal precedent than does Hyatt's position: whereas Hyatt would have the default be in favor of attendance unless a judge makes particularized findings justifying a defendant's absence from a view, Snyder is more reasonably read as holding that the default is that a defendant has no right to be at a view unless there are particular circumstances making such exclusion unfair. See Devin v. DeTella, 101 F.3d 1206, 1208 (7th Cir. 1996) ("The lesson of Snyder is that, if in any given case the exclusion of the defendant from a jury view is found to be a deprivation of due process, it is not because the Constitution guarantees the defendant an absolute right to be present; it is only because his absence, under the particular circumstances of his case, can be said to have denied him a fair proceeding."). Because Hyatt made no showing to the Appeals Court that his exclusion caused him any substantial harm, and because Justice Brady reasonably cited security concerns as a justification for excluding Hyatt from the view, see Hyatt, 2014 WL 2178782, at *1, this Court

13

cannot disturb the Appeals Court's ruling as an improper application of Snyder.

### 2. Deck v. Missouri

Hyatt offers one other reason as to why his exclusion from the view entitles him to relief, arguing that the Appeals Court unreasonably applied federal law when it rejected his analogy between exclusion from a view and forced appearance before the jury in shackles or prison attire. Hyatt's Mem. 6-9. Citing Deck v. Missouri, 544 U.S. 622, 630-31 (2005), Hyatt identifies three principles of due process that are violated when a defendant is forced to appear before the jury in shackles without a particularized finding that shackles are necessary: first, that it undermines the presumption of innocence; second, that it impedes the defendant's ability to communicate with his lawyer; and third, that it undercuts the dignity with which courts must treat defendants. Hyatt's Mem. 8; see also id. at 7-8 (citing Estelle v. Williams, 425 U.S. 501, 505-06 (1976) (holding that both due process and equal protection rights are violated when a defendant is forced to appear in prison garb simply because he cannot afford bail)). Hyatt claims that these principles from Deck are even more present in the context of a jury view, as a defendant's exclusion "will naturally suggest to the jury that [he] is so dangerous that he must be separated from the community at large, and cannot even be allowed to

appear in chains outside the courthouse"; furthermore, barring a defendant from a view makes communication with defense counsel impossible. Id. at 8-9. If Deck's principles inhere in the context of jury views, Hyatt would suggest, so must its holding - and the failure of Justice Brady and the Appeals Court to make particularized findings regarding the danger posed by Hyatt would thus mandate habeas relief.

This argument, however, fails to account for the strict standards of AEDPA and Section 2254(d). Under this statute, this Court may not disturb the Appeals Court's ruling unless it was contrary to or an unreasonable application of federal law. Even were this Court to be persuaded by Hyatt's analogy between his case and the principles articulated in Deck, it cannot be said that the Appeals Court unreasonably applied federal law in ruling to the contrary. After all, as discussed above, there is ample federal precedent that speaks directly to the question of defendants' attendance at jury views, and the Appeals Court reasonably held that that precedent was satisfied here. Given that ruling, it would be bizarre indeed to say that it was then unreasonable to fail to import to the jury view context principles from a completely separate line of doctrine. Consequently, this Court must adhere to the Appeals Court's ruling that Hyatt's rights were not violated.

**III. CONCLUSION**

For the foregoing reasons, Hyatt's petition for a writ of habeas corpus, ECF No. 1, is DENIED.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
U.S. DISTRICT JUDGE
